Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have three appeals to hear this morning. We've read your briefs, the authority cited in your briefs, and at least portions of the record, so we're familiar with your cases. We're probably going to have some questions this morning. Be mindful of the clock when it expires. It is time to end your argument, but if you're answering a question from the court, you should feel free to finish your answer, but do be mindful of the clock. If you have a rebuttal time, you won't be eating into that time if you're answering a question from the court. Our first case is Aguilera Fernandez versus the Attorney General. Ms. Conkle, will you speak with us, please? Yes. Thank you, your honors, and good morning. May it please the court. My name is Maddie Conkle, and I'm here today representing Mr. Denise Aguilera Fernandez, who seeks asylum and withholding of removal. The IJ found Denise's testimony to be thoroughly credible and that his prior mistreatment was, quote, severe and regrettable, yet the IJ and later the BIA denied that Denise had been previously persecuted and said that he had no objective fear of future persecution. This court should reverse for two reasons. First, the Cuban police beat and detained Denise seven to ten times over a two-year period to stop him from exercising a fundamental right. This qualifies as past persecution. And second, nothing in the record indicates that Denise would be treated differently if forced to return to Cuba. When Denise was 23 years old, the Cuban police beat and detained him for 24 hours after he spoke out against government repression. For the next two years, the government monitored his activities, interrogated his friends, and would detain him on dates of national importance to stop his political protest. Each time they detained him- Ms. Conkle, I guess the problem I have with this is we have a standard of review of substantial evidence that would require us to hold that the board that is finding that this mistreatment did not rise to the extreme level of persecution was so wrong that no reasonable fact finder could have made that finding in essence. Even though we have to view the evidence in the light most favorable to the government, that the record would compel a finding of persecution. And I guess my concern is when the several detentions and beatings occurred, none of the detentions was ever for more than a day. It was over a two-year period. So we're talking about maybe three or four times a year. And he never suffered an injury of any kind. Never a cut, a scrape, a bruise, even medical treatment. And at what point do we say that it can we say that it necessarily crosses the line of fraud? Your Honor, if I may first on the standard of review issue, Denise maintains that this court should review this case de novo as he was found credible by the IJ. And this court's prior ruling in Mejia says that once a positive credibility finding has been made, the universe of facts is now undisputed. Thus all this reviewing court is doing is applying undisputed facts to a legal standard, which would under review be typically reviewed under de novo. So we would maintain that the proper standard of review here is de novo review. On the issue of severity, the standard here is that the conduct must be severe, as Your Honor mentioned. Here we maintain that the cumulative impact, which this court has looked to in the past of Denise's mistreatment, is severe. As he was beaten and detained numerous times over a two-year period. The fact that he did not suffer detectable physical injuries, this court has said, is not determinative for the issue of past persecution as was held in Sanchez-Gimenez. And here the cumulative impact, the continuousness, the number of times, the fact that he was detained on dates of national importance and thus inhibiting a fundamental right, all point to the fact that this was indeed a severe previous mistreatment. In total, when the seven to ten instances are added together over this two-year period, the Cuban government detained Denise for seven days. And each time upon those detentions, he also did suffer physical mistreatment. The police did beat him. So as this court has held the cumulative impact is considered. At what point would we say that it's harassment, even severe harassment, but falls short of persecution? Doesn't a fact finder really get to make that determination? Isn't that essentially, at the end of the day, still a question of fact? Your Honor, the question of what rises to the level of persecution would be a legal standard as what is persecution is defined. How would we define the legal rule where we would say it's crossed at this point? I mean, if it's a legal rule, it's got to be something administrable that we're going to apply in future cases where a fact finder would know, well, that the rule's been crossed here versus in another situation. I understand Your Honor's point that this is a highly fact-intensive inquiry into what rises to the level of being severe for past persecution. The review question here, though, does not go into whether or not the facts as they stand in the record should be reconsidered. The facts stand as they are. And so all that this court is doing is applying those undisputed facts to the legal standard of what qualifies as severe past mistreatment. And this court looks to its precedents in determining what rises to the level of severity in the past. And this court has held the cumulative impact of even minor instances by non-government actors, such as in the Delgado case. Well, let's look at it this way. I certainly understand your point that we don't have competing versions of what happened. There's no dispute about what happened to your client. But if the question is that this is simply a legal question, how would we define persecution in a way that future panels would know that the line was necessarily crossed? Your Honor, the standard here does account for the facts and circumstances of each particular case. And here, Denise's mistreatment is well over the line that this court has found in previous cases. The line, Your Honor, under the law is whether or not the conduct is severe or not. And this court has held in prior cases that with less severe, less cumulative misconduct by non-government actors was past persecution, such as in the Delgado case with non-government actors and in the Xi case with government actors, Xi as well, including the exercise of a fundamental right as also present here. Denise's mistreatment, the fact that it occurred over a longer period of time, a two-year period, included numerous instances of mistreatment by the government itself indicates that this is well over that line of severity that this court must apply. Now, the government's own training manual that guides asylum decisions also supports this court's precedence in my argument here today that multiple instances in the past of past mistreatment can be accounted for in determining whether or not past persecution occurred. Moreover, the manual says that even minor beatings by government officials due to a protected characteristic can rise to the level of persecution for asylum. That means that they also isn't the standard, whether the BIA's determination or the IJ's determination, either one, that the petitioner was not eligible for asylum, isn't the question for us whether that determination was manifestly contrary to law. Your Honor, under a substantial evidence standard, that would be the standard, but we maintain that this court ought to review Denise's case de novo as very good. What does the statute say? Your Honor, the statute leaves matters of law under de novo, or the regulations, I should say, leave the... Well, putting the regulations aside, doesn't 1252b4c say a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law? Your Honor, perhaps for the IJ and the BIA's review, I'm sorry, the IJ's determination, but the reviewing court under the regulations here is able to review matters of law under a de novo standard and matters of fact under a substantial evidence standard, which the BIA did in this case by applying that regulation, that matters of law. Is that your position, or is it your position that admission to the United States is different from asylum? That too, as well, Your Honor. The determination of whether or not past persecution has occurred is a different question than being solely admitted into the United States. I thought that might be your position. So, Your Honor, the BIA was also wrong to find that Denise did not have a fear of future persecution, as nothing in the record indicates that Denise would be treated differently if forced to return to Cuba. The BIA... Am I correct that your inference of future persecution rests entirely on the past persecution that he suffered, if it rises to that level? Your Honor, we do maintain that he did suffer past persecution, thus would be entitled to the presumption of future persecution. However, even if this court were to find that no past persecution had occurred, we argue that Denise would have an objective fear of future persecution. But the evidence for that would really be all the evidence about what he's already suffered, right? Your Honor, that and the fact that there's no evidence that the Cuban government wouldn't escalate his mistreatment moving forward. So, thank you. Thank you, Ms. Canco. You've saved four minutes for rebuttal, so we'll hear from the government. Ms. Aldana. Yes, thank you, Your Honors, and good morning. May it please the court. My name is Soraya Aldana. On behalf of the Attorney General of the United States, the government asked the court to deny the petition for review for two reasons. First, being that the petitioner failed to establish that his harm rose to the requisite level of persecution. And second, being that he failed to establish a reasonable fear of future persecution. This court's president sets a high threshold for mistreatment to constitute persecution, and here substantial evidence supports the agency's finding that the petitioner did not suffer the type of severe or sufficiently extreme mistreatment to establish persecution. The BIA counsel treats or treated the past persecution determination as a question of law, didn't it? It did, Your Honor, and it's standard of review. However, the board does not dictate this court's standard of review, and this court has a well-established case law employing substantial evidence tests to pass persecution determinations, even when there is a positive credibility determination, and that can be found in this court's decision in Islam, Zayn de Santa Maria Sanchez Jimenez, and even this court in Xi viewed petitioner's testimony as true, nonetheless employ these substantial evidence tests. My point, that was a premise of it, is that the BIA at least recognized, which has considerable expertise in this area to say the least, past persecution determination as a question of law, and future persecution as a question of fact. There's a rational basis for that distinction, isn't there? Well, Your Honor, I guess that what the board was doing in that case was just, as I mentioned, determining its standard of review. I understand that, but it made a distinction in its standard of review from past persecution, which it reviewed the IJ's determinations as a question of law, they no vote to the board, as opposed to future persecution, which is more of a predictive fact standard, which it said was clear error. That's correct, Your Honor. Yes. Yes, Your Honor. However, this court's standard of review would be different in this case, because this court has indicated that the fact finder must determine cumulatively whether or not the harm rises to the level of persecution. In this case, the agency is the fact finder, which this court has also has held in silver, that the agency is the proper fact finder in this case. So we would ask the court... What is our standard on reasonable fear of future persecution? The standard is that the record must compel a finding  So we make no distinction. There's a dissonance or a difference, at the very least, between the BIA's treatment of those two questions and our treatment. That's correct, Your Honor. If I understand this right, really, the board is only making one determination, and that is whether the petitioner has a well-founded fear of future persecution. You can prove that in two different ways. One is you can prove that you have suffered past persecution that would create a presumption of the predictive factual question that you will suffer, that you have a well-founded fear of future persecution. The other is that you have other facts that have nothing to do with what's happened to you in the past in terms of give rise to a well-founded fear of future persecution. Perhaps there's been a regime change. From the time of the Shah to the Ayatollah in Iran, someone who was not Muslim and who was being returned to Iran would have been able to say, I didn't suffer past persecution under the Shah, but I've got that fear under the Ayatollah. At the end of the day, it's really one question, right? Yes, Your Honor. In this case, it would be just the board determining whether or not there was a reasonable possibility that the petitioner would face future persecution. In this case, the record does not compel that he will, especially in light of the fact that he never had criminal charges, an arrest warrant, was able to leave the country without incident, and his family remains in Cuba unharmed. Their argument is the reason he was able to leave the country is not that he was coming to the United States directly, but went through another country, and that if the government had known that he was coming to the United States, things might have been entirely different, right? Yes, Your Honor. However, based on the report which the petitioner provided, the Cuban government often uses arbitrary reasons to deny permission for any travel for political activists. So, if the government viewed the petitioner as such an activist, then he would have been denied, or he could have been denied permission to travel regardless if he was going to the United States or not. Ms. Aldana, in the cases that you compare Mr. Fernandez's case to, like Zhang, Kazemzadeh, and Janda, there was just one brief detention, and here there were multiple detentions over the course of two years, and also what the IJ characterized as physical violence. I didn't see in the record any indication that these beatings were going to stop. So, doesn't that pattern distinguish this case from those cases that you compare it to? Well, Your Honor, if I could refer Your Honor to this court's case in Xi, which the petitioner heavily relies upon. In that situation, the petitioner was detained for a consecutive week, so it was multiple detentions, and he was forced to sleep outside in the rain overnight while being tied to an iron rod. Wait, do you agree with me that this case really isn't like Zhang and Janda and Kazemzadeh? I can never say that one. Well, no, Your Honor. I would say that even within Zhang and the Janda, there was more severe treatment than in this case, because in this case, there was no, the beatings that he suffered, while, of course, terrible, and not to diminish his experiences in any way. However, they never amounted to bruises or marks or required medical treatment. Well, let's say the conduct that Mr. Fernandez was subjected to repeated detention and physical violence. Is there some point at which it becomes too much? What if this happened once a month or two times a month? At that point, would you say that it doesn't amount to past persecution? Well, Your Honor, I would base it on this court's president, and I would say if we look to this court's president in Xi, which was multiple detentions, also an infringement of rights, but it was a complete infringement of rights to the same extreme nature that it was in Xi. Within Xi, this court compared it to the cruel and unusual punishment of being tied to the hitching post, which the Supreme Court addressed in Hou Bipao Sir. So there's a clear distinction between the treatments of the two cases. I don't think you've really answered my question, though. At what point would this very conduct become too much? What if he was detained once a week, two times a month, or over a period of five years, let's say? I would say it would become too much when the record compels it. I could not identify a single, I could not, I don't think it has a magic number. Would you agree with me, you seem to be focusing on the physical violence element. Would you agree with me that this behavior was some element of physical violence, but no broken bones, no evidence of soft tissue injury? Would it be sufficient if this conduct happened frequently enough, even without that evidence of injury? I would have to say, Your Honor, that it would be based on the cumulative effect of everything. I could not say. So you're saying that it could be, that at some point, I'm saying, I'm saying that it could become too frequent and too long, and the beating's too frequent and too long to where it would? A reasonable adjudicator could make that conclusion. However, in this case, the record that we have before us with the detentions, the amount of detentions he's had, and the treatment that he experienced, again, while not diminishing his experiences, it's insufficient to amount to persecution with the record before us. Let me ask you this, counsel. Suppose it continues at the existing rate. What's passed is pro-law. He goes back in Cuba, returned to Cuba, and every Castro-type holiday or some kind of holiday where they pick him up and do this, they continue at a rate of 10 times, seven to 10 times every two years. He's in, he's 29, I think now, 29 or 30. Let's say he's got a life expectancy, if the beatings don't shorten it, of another 40 years. So if he's going to be subjected to this three and a half to five times a year for the next 40 years, is that persecution? Well, your honor, I would not want to speculate on that. But I want you to speculate on it. Is that frequent enough over a long enough period of time to amount to persecution? That would be based on what the agency would determine is sufficient. That would be up to the fact finder. So if some fact finder said it's stipulated here and I find as a fact that this is going to happen at the same rate for the next 40 years, but I don't think that's enough to be persecution, we would affirm. Is that what you're telling us? Well, no, your honor, what you're referring to is future persecution. Yeah. So in that case, there would have to be something within the record that would be singling out the petitioner, indicating that he would be facing this type of treatment. No, there wasn't. In my hypothetical, all there'd have to be is a stipulation. There's a stipulation. Cuban government comes in and says, we don't usually get involved in these things, but that's exactly what we plan to do. And we'll make sure it's done until he leaves this earth. So you've got a finding, say the IJ just finds it. Yeah, I think this is going to continue. 40 years, three and a half to five times a year. But I think under the standard of persecution, as I understand it from the 11th circuit and elsewhere, that's not enough. Under our evidence standard of review, is that due to be reversed or not? I mean, one can determine that a reasonable adjudicator could find that that would be compelling or however in this. So again, your honor, those are not the standard you're asking us to apply. Could a reasonable adjudicator find that that was not persecution is the standard you're asking us to apply, as I understand. It's could a reasonable adjudicator, would a reasonable adjudicator be compelled to make a finding of persecution? Right. And what you're asking? Yeah. Would it be? Would it be persecution if? No, not would it be? Would a reasonable adjudicator be compelled to find it? If they stipulated on the fact that he would be harmed for 40 years. Yes. Yeah. Same rate. Same blows. They've got it in videotape. They train the new people. Be sure you don't vary. 40 years, three and a half to five times a year. I could not make that conclusion for you, your honor. I don't I don't think it's because those aren't the fact of this case. No, no, no. Counsel, counsel. You've been to law school. Function of a hypothetical. Don't fight the hypothetical. Court does not allow people to wiggle out from the hypothetical. Now, that's the hypothetical. You are the government attorney. You're determining whether there is a credible argument that that can get past a court of appeals. You tell us the answer. I would say pursuant to this court's president. That it would not be severe enough. To compel a conclusion. Thank you. If there are no further questions, the government asks the court to deny the petition for review. Hey, Miss Aldana, we appreciate your argument. Ms. Conkle, you've reserved four minutes for rebuttal. Thank you, your honors, your honor. Once again, on the standard of review question, we ask that this court review the question of past persecution in this case under DeNovo review as this court's precedent in Mejia compels that once a positive credibility finding has been made that the proper standard to review the past persecution question is DeNovo and under DeNovo review, Denise's past mistreatment does rise to the level of severity to meet the past persecution standard. In these prior cases, the government relies on there was one detention. And no, there was one detention in one instance where the government or even the non-government actors acted against the asylee. She here, your honors, is directly on point as I'm not sure that's right, that it was that all those cases involved one detention. I mean, she mentioned several precedents. Silva, John Donne, Kazemzadar. I mean, Kazemzadar is my memory of that is that that was an Iranian Christian who would have had to practice his death. I'm not sure that you're right about the standard. Your honor, in that specific case, the mistreatment, the specific mistreatment against the asylee was one instance of a four-day detention. Here, Denise suffered a cumulative. Oh, I'm sorry, your honor. I thought you were talking about Kazemzadar. Dejonda, your honor. Yeah, well, my memory of Kazemzadar is he had a future fear of wealth and a future persecution based on religion, but not a past persecution based on political opinion. Yes, your honor. Yes, your honor. So in Dejonda, that was, again, a one instance of a detention that lasted 36 hours. However, here, your honor, Denise suffered injuries, right? Sure, your honor. And Denise also suffered physical mistreatment that just did not culminate in physical. Did we say the record compelled a finding of persecution in Dejonda? No, your honor. There was no persecution finding in that case. But here, your honor, the cumulative impact and the IJ's own determination that Denise's past mistreatment was, quote, severe and regrettable indicates that it does rise to the level of past persecution when considered cumulatively. The government's own training manual that guides asylum decisions, again, indicates that multiple detentions in multiple instances, especially with government actors, can rise to the level of past persecution and for the grant of asylum. This was Denise's treatment over the two year period after being inhibited from exercising a fundamental right was over the line of severity. His past mistreatment rises to the level of previous persecution as he was continuously detained and beaten by his government for two years, merely because he spoke out against government repression and corruption. And he reasonably fears that this mistreatment would only continue if forced to return to Cuba. And this entitles to Denise to asylum under under this law. Therefore, isn't it more accurate to say he was regularly detained and beaten as opposed to continuously? He wasn't detained for two years. Sure, your honor, I understand the distinction. Yes, he was not held in confinement for two years. He was detained multiple times over a two year period. So thank you, your honors. Ms. Conkle, thank you. And, and the court knows that you were your law student who's practicing under supervision of a member of the SPAR. And you did a really nice job this morning and helped us with this case. Of course, we always appreciate the argument of the government as well. But nice, nice job, Ms. Conkle. Thank you. Thank you.